[No. 33053-5-I.    Division One.    March 13, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH
LAMONT SIMS, *Appellant*.

*Robert Leen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Catherine Shaffer, Deputy,* for respondent.

BECKER, J. — This decision affirms the judgment convicting Keith Sims of second degree assault for breaking the jaw of Anita Bellinger. Sims denied the assault and suggested the broken jaw resulted from a fall. Bellinger, who had once lived with Sims, did not testify. The conviction rests on Bellinger's hearsay statements attributing the broken jaw to Sims' assault.

Sims appeals the hearsay rulings and challenges the sufficiency of the evidence to convict. He also assigns error to the late entry of findings of fact and conclusions of law.

### EXCITED UTTERANCE

Seattle Police officer Ronald Martin, responding to a 911 call, met Bellinger on a residential street. She was crying and had an injury to her jaw. With some reluctance, she told the officer that Keith Sims had assaulted her. She said Sims and two other men had chased her from her mother's house after pounding and kicking on the door. The trial court admitted this hearsay statement under the exception for an excited utterance.

ER 803(a)(2) allows statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition". Admission of an excited utterance does not violate the con-

frontation clause even when the declarant is available to testify at trial. *State v. Palomo*, 113 Wn.2d 789, 796, 783 P.2d 575 (1989), *cert. denied*, 498 U.S. 826, 112 L. Ed. 2d 53, 111 S. Ct. 80 (1990).

■ The inquiry for admission of an excited utterance is highly factual, depending on factors including the passage of time. *See State v. Dixon*, 37 Wn. App. 867, 871-73, 684 P.2d 725 (1984). The crucial question is whether, when Bellinger made the statement, she was still under the influence of the stressful event to the extent that her statement "could not be the result of fabrication, intervening actions, or the exercise of choice or judgment". *Johnston v. Ohls*, 76 Wn.2d 398, 406, 457 P.2d 194 (1969).

■ Police Officer Martin arrived on the scene within a few minutes of the dispatch. Witnesses saw Bellinger, crying and upset, talking to the officer "right after" the incident. Her statement was not so detailed as to suggest the exercise of choice or judgment. *Cf. Dixon*, 37 Wn. App. at 874. Her hesitancy in speaking to the officer does not, as Sims contends, negate the spontaneity of her statement.

■ Sims argues that Bellinger's statement to the officer must have been the result of fabrication because she later allegedly made an inconsistent statement to his grandmother. He did not present this argument to the trial court as a reason for excluding the excited utterance. Therefore, he did not preserve the objection and we will not consider it. *See* ER 103(a)(1); RAP 2.5(a); *Walker v. State*, 121 Wn.2d 214, 218, 848 P.2d 721 (1993); *State v. Wicke*, 91 Wn.2d 638, 642-43, 591 P.2d 452 (1979).

We conclude the record supports the trial court's determination that, when Bellinger spoke to Officer Martin, she had no previous opportunity to deliberate or fabricate. The admission of the excited utterance was within the court's discretion.

## Medical Diagnosis or Treatment

Bellinger sought treatment at Providence Medical Center. Two physicians and a social worker testified that Bellinger,

while at Providence, reported she had been beaten up by a man she knew. The social worker said Bellinger told him she had been assaulted in the yard of her mother's neighbor by the man she once lived with. Sims assigns error to the admission of this testimony as barred by the hearsay rule.

The hearsay rule does not exclude:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

ER 803(a)(4). Sims contends that Bellinger's attribution of her broken jaw to an assault by Sims was not pertinent to diagnosis or treatment.

As a general rule, statements attributing fault are not relevant to diagnosis or treatment. *State v. Butler*, 53 Wn. App. 214, 217, 220, 766 P.2d 505, *review denied*, 112 Wn.2d 1014 (1989); *State v. Fitzgerald*, 39 Wn. App. 652, 658, 694 P.2d 1117 (1985). A statement by a child abuse victim attributing fault to a member of the victim's immediate household is a recognized exception to the general rule because it is "relevant to the prevention of recurrence of injury". *Butler*, at 221; *In re Dependency of S.S.*, 61 Wn. App. 488, 503, 814 P.2d 204, *review denied*, 117 Wn.2d 1011 (1991).

For similar reasons, a statement attributing fault to an abuser can be reasonably pertinent to treatment in domestic sexual assault cases involving adults. *United States v. Joe*, 8 F.3d 1488, 1494 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184, 127 L. Ed. 2d 579, 114 S. Ct. 1236 (1994).

> All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household. In the domestic sexual abuse case, for example, the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere. In short, the domestic sexual abuser's identity is admissible under Rule

803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes "reasonably pertinent" to the victim's proper treatment.

(Footnote omitted.) *Joe*, 8 F.3d at 1494-95.

The testimony demonstrated that Bellinger's physicians and the social worker considered the information attributing fault to be reasonably pertinent to her treatment. The emergency room physician and the social worker testified that Providence Medical Center has a policy of routinely referring assault or domestic violence victims to the social work department. The social worker, Robert Snell, ascertained that Bellinger viewed her relationship with Sims as a continuing one. As part of the treatment plan, Snell encouraged Bellinger to change her relationship pattern and discussed with her how to avoid threatening situations.

Sims objects in particular to the testimony of the surgeon, Dr. Laney, on the basis that Bellinger's statements were not pertinent to his function as a surgeon. Dr. Laney testified that "Patients with . . . abuse problems oftentimes are hard to treat from a pain management standpoint." He said the hospital kept Bellinger for an extra day after surgery "for further social work interaction". His testimony establishes that awareness of the abuse was useful to him in his own responsibility for Bellinger's care.

Under these circumstances, the trial court did not err in admitting testimony from the hospital personnel about Bellinger's hearsay statements as reasonably pertinent to diagnosis or treatment.

Sims argues that Bellinger's statements to the social worker were not shown to be motivated by her desire to obtain treatment. He contends they may instead have been motivated by her anger at him.

> [T]he evidentiary rationale for permitting hearsay testimony regarding . . .statements made in the course of receiving medical care is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness.

(Footnote omitted.) *White v. Illinois*, 502 U.S. 346, 355, 116 L. Ed. 2d 848, 859, 112 S. Ct. 736 (1992). Sims made no

effort in the trial court to challenge the admissibility of Bellinger's hearsay statements on the ground that her motivation was something other than the hospital context would suggest. We will not consider this argument for the first time on appeal. *See* ER 103(a)(1); RAP 2.5(a); *Walker*, 121 Wn.2d at 218; *Wicke*, 91 Wn.2d at 642-43. Also outside the scope of our holding is whether Bellinger's hospital statements would survive scrutiny under the confrontation clause,[1] as Sims does not raise that issue.

■ Sims next challenges the sufficiency of the evidence to convict. The question is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Without Bellinger's hearsay statements, the circumstantial evidence may have been insufficient to prove beyond a reasonable doubt that the injury resulted from an assault or that Sims was the assailant. When either her excited utterance to the officer or her statements to the personnel at Providence are taken into consideration, the evidence satisfies the test in *Green*.

■ Sims contends the State's late entry of findings of fact and conclusions of law requires reversal. This assignment of error is unsupported by the necessary showing of prejudice or some form of tailoring of the findings to address the issues raised in the Appellant's brief. *See State v. Taylor*, 69 Wn. App. 474, 477, 849 P.2d 692 (1993). Accordingly, we reject it.

Affirmed.

BAKER, A.C.J., and AGID, J., concur.

---

[1] *See Idaho v. Wright*, 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990); *State v. Florczak*, 76 Wn. App. 55, 68-70, 882 P.2d 199 (1994).