[No. 53580-3-I.   Division One.   September 19, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY DUANE MOSES, *Appellant*.

---

[41] (Emphasis added.)

*John Henry Browne* and *Jessica J. Riley* (of *Law Offices of John Henry Browne, P.S.*) and *Rita J. Griffith*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 SCHINDLER, J. — A jury convicted Jeffrey Duane Moses of murder in the second degree for the shooting death of his wife, Jennifer Moses. Moses appeals his conviction on multiple grounds, including violations of his right to confrontation under *Crawford v. Washington*,[1] improper admission of ER 404(b) evidence and medical examiner opinion testimony, and exclusion of expert testimony regarding Jennifer's depression and Moses' suicide defense. Moses also appeals his exceptional sentence under *Blakely v. Washington*.[2] We affirm Moses' conviction but reverse the exceptional sentence and remand for resentencing.

## FACTS

¶2 In the early morning of September 27, 2002, Moses' mother, who lived in California, called the police to report that her daughter-in-law, Jennifer Moses, was dead. The police found Moses on the street outside his house, drinking beer, and carrying his younger son on his back. Moses' other son was asleep in the house. According to Moses, Jennifer shot herself and committed suicide. When the officers attempted to enter the house, he told them it was unnecessary because he had cleaned everything up. Police found Jennifer wrapped in a rug in the garage, along with a pile of bloody towels and sponges. Jennifer had a gunshot

---

[1] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[2] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

wound to her head, blunt force trauma to her lips and a cracked tooth. The .410 gauge derringer used in Jennifer's death was found in the master bedroom. The derringer had been recently cleaned and was loaded with two unspent shells. When questioned, Moses told police Jennifer had been depressed and that she came downstairs that evening with the derringer, knelt down and shot herself in the head while Moses tried to get the gun away from her. Moses said he moved Jennifer's body to the garage to prevent their sons from seeing her. He then backed his truck up to the garage to load her body into it and bury her in the woods, as she had requested. When the truck hit a post, Moses said he abandoned the attempt to move Jennifer's body.

¶3 Moses was charged with premeditated murder in the first degree and unlawful possession of a firearm. The State alleged Moses intentionally shot Jennifer during a domestic dispute. The defense theory was that Jennifer committed suicide because she had a history of depression and suicidal ideation, together with drug and alcohol use. Over Moses' objection, the trial court admitted out-of-court hearsay statements made by Jennifer and his children to police, a doctor, and a social worker about prior domestic violence.

¶4 The jury convicted Moses of murder in the second degree with a deadly weapon. The trial court sentenced Moses to an exceptional sentence of 35 years.[3] Moses appeals his conviction and the exceptional sentence.

## ANALYSIS

### Confrontation Clause

¶5 Moses contends admission of the out-of-court hearsay statements made by Jennifer and her son, F.M., concerning a prior 2001 incident of domestic violence violated his confrontation clause rights under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Under the Sixth Amendment, the defendant has the right to

---

[3] The standard range sentence was 235 to 335 months.

confront witnesses and to meaningful cross-examination. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.[4]

¶6 In the early morning of November 1, 2001, Jennifer's neighbor called 911. The neighbor reported Moses had hit and kicked Jennifer. After the police arrived, over the course of an approximately 40-minute interview, Jennifer described the assault. She was then transported to the hospital for treatment of her injuries. The children, F. and F.M. went with Jennifer to the hospital emergency room (ER). Jennifer told the treating ER doctor and the hospital social worker that Moses hit her and kicked her in the face. The trial court admitted statements made by Jennifer to the police, the ER doctor, and the social worker as excited utterances.

¶7 The hospital social worker also interviewed Jennifer's sons F. and F.M., about the assault. Based on F.M.'s report that his dad kicked his mom, the social worker called Child Protective Services (CPS). The social worker testified at trial about what F.M. told her and that she reported the domestic violence assault to CPS.

¶8 Before *Crawford*, an out-of-court hearsay statement was admissible and did not violate the confrontation clause if the statement was reliable. A statement that qualified for admission under a firmly rooted hearsay exception established reliability.[5] *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); *State v. Thomas*, 150 Wn.2d 821, 855-56, 83 P.3d 970 (2004). The excited utterance exception is a firmly rooted hearsay exception and an out-of-court statement was admissible if it qualified as an

---

[4] The Sixth Amendment was incorporated and made applicable to the states through the due process clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[5] A statement that qualified for admission under a " 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *White v. Illinois*, 502 U.S. 346, 357, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992).

excited utterance. *State v. Woods*, 143 Wn.2d 561, 595, 23 P.3d 1046 (2001).

¶9 The Supreme Court in *Crawford* rejected its decision in *Ohio v. Roberts* and held that the confrontation clause prohibits testimonial hearsay without regard to whether a firmly rooted hearsay exception applies or there is adequate indicia of reliability. The "unpardonable vice of the *Roberts* test . . . [was] not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Crawford*, 541 U.S. at 63. The Court held that an out-of-court testimonial statement cannot be admitted unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.[6]

¶10 The *Crawford* Court declined to precisely define the confrontation clause bar to testimonial hearsay. *Crawford*, 541 U.S. at 68. The petitioner in *Crawford* asked the Court to adopt a definition that limited testimonial statements to ex parte in-court testimony or its functional equivalent— " 'such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' " *Crawford*, 541 U.S. at 51 (quoting Br. for Pet'r 23). The National Association of Criminal Defense Lawyers urged the Court to adopt a definition that included " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " 541 U.S. at 52 (quoting Br. for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3). The Court also noted a formulation suggested by the concurrence in *White v. Illinois* which defined testimonial as " 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' " *Crawford*, 541 U.S.

---

[6] *Crawford*, 541 U.S. at 68 ("Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.").

at 51-52 (quoting *White v. Illinois*, 502 U.S. at 365 (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment)).

¶11 Although the opinion suggests different formulations of a definition for testimonial hearsay, the *Crawford* Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.' " 541 U.S. at 68. While the Court in *Crawford* did not provide a "precise articulation" or comprehensive definition of testimonial hearsay for purposes of the confrontation clause, it defined "testimony" as " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact' "[7] and held that whatever else the term covers it applies at a minimum to (1) ex parte testimony at a preliminary hearing and (2) "[s]tatements taken by police officers in the course of interrogations." *Crawford*, 541 U.S. at 52.

*Statements to Police Officers*

¶12 Under *Crawford,* statements made during police interrogation are testimonial. But just as the Supreme Court did not comprehensively define testimonial hearsay, it also did not comprehensively define "police interrogation." Instead, the Court provided general guidance to determine what constitutes police interrogation. *Crawford*, 541 U.S. at 53 n.4. First, the Court specified that the term "interrogation" is to be used "in its colloquial, rather than any technical legal, sense." *Id.* The Court also held that a declarant's statement "knowingly given in response to structured police questioning" qualifies as testimonial under "any conceivable definition." *Id.*

¶13 Post *Crawford*, our appellate courts have addressed whether particular statements constitute testimonial or nontestimonial hearsay. *State v. Davis*, 154 Wn.2d 291, 111 P.3d 844 (2005); *State v. Fisher*, 130 Wn. App. 1, 108 P.3d 1262 (2005); *State v. Mason*, 127 Wn. App. 554, 126 P.3d 34 (2005); *State v. Orndorff*, 122 Wn. App. 781, 95 P.3d 406

---

[7] *Crawford*, 541 U.S. at 51 (alteration in original) (quoting 1 Noah Webster, An American Dictionary of the English Language (1828)).

(2004); *State v. Powers*, 124 Wn. App. 92, 99 P.3d 1262 (2004). Two recent cases, *State v. Powers* and *State v. Davis*, specifically address the admission of statements made during a 911 call.

¶14 In *Powers*, the defendant appealed his conviction for violating a domestic violence protection order on the ground that the trial court erred in admitting a recording of the 911 call. *Powers*, 124 Wn. App. at 94. In the 911 call, the victim reported the defendant had been in her home in violation of the protective order. The *Powers* court rejected the State's request for a bright-line rule to admit all 911 calls as contrary to *Crawford*. Instead, the court adopted a fact-intensive case-by-case approach and considered whether the purpose of the 911 call was a plea for help, whether the call was part of the criminal incident, and whether the call was made while the crime was in progress or to further a prosecution. The court concluded the victim's statements to the 911 dispatcher were testimonial because the purpose of the call was to report the crime and "assist in [Powers'] apprehension and prosecution, rather than to protect herself or her child from his return." *Powers*, 124 Wn. App. at 102.[8]

¶15 In *Davis*, the Washington Supreme Court held that it is necessary to examine the circumstances and content of a 911 call in each case in order to determine whether "the declarant knowingly provided the functional equivalent of testimony to a government agent." *State v. Davis*, 154 Wn.2d at 302. The court also distinguished emergency 911 calls from the in-custody police interrogation in *Crawford*: "Even though an emergency 911 call may assist police in investigation or assist the State in prosecution, where the call is not undertaken for those purposes, it does not resemble the specific type of out-of-court statement with

---

[8] Using a similar analysis, this court in *State v. Mason* adopted a case-by-case approach and looked to the purpose of the declarant in victim-initiated contacts with the police. The *Mason* court concluded that the victim's statements to four police officers and a victim's advocate were not testimonial because they were made with the purpose of seeking help and protection when the victim was in peril. *Mason*, 126 P.3d at 40.

which the Sixth Amendment is concerned." *Id.* at 301. The court stated that the declarant's perspective and purpose for making a statement are important factors to consider in deciding whether a statement is testimonial and concluded that the emergency 911 call identifying the assailant was not testimonial "because of [the] immediate danger [and] there [wa]s no evidence [the victim] sought to 'bear witness' in contemplation of legal proceedings." *Id.* at 304.[9]

¶16 Here, Jennifer went to a neighbor's house approximately half an hour after the assault and asked the neighbor to call 911. Police arrived approximately a half hour later and spent 40 minutes with Jennifer asking questions and taking a detailed statement.[10] Jennifer told the officers that Moses had been drinking and became angry. She and Moses argued and he threw furniture, punched her, and ripped the phone out of the wall. When she tried to flee, Jennifer said Moses kicked her in the head and the face. Deputy Ken O'Neal testified that Jennifer reluctantly reported what happened. "She was very hesitant to tell us what happened. She stated that she didn't want him to go to jail. She was afraid he would lose his job. He'd be in jail for a long time and she was fearful of having that consequence as a result of reporting this."[11]

¶17 Although Jennifer may have originally asked the neighbor to call 911 for help and protection, later, over a period of 40 minutes, Jennifer gave a detailed report of the assault in response to structured police questioning. And, during the interview, Jennifer acknowledged the likelihood that her statements could be used in prosecuting Moses. On this record, we conclude that Jennifer's statements to

---

[9] The court decided that other statements in the 911 call that were not related to seeking help and protection were testimonial but admission was harmless. *Davis*, 154 Wn.2d at 305.

[10] Because the trial occurred before *Crawford*, the record is unclear as to the timing of Jennifer's statements about Moses during the police questioning.

[11] Report of Proceedings (RP) (Oct. 15, 2003) at 77.

Officer O'Neal were testimonial under *Crawford* and should not have been admitted.[12]

*Statements Made for Medical Diagnosis or Treatment*

¶18 Moses challenges the trial court's decision to admit Dr. Appleton's testimony about what Jennifer told him about the assault and the social worker's testimony about what Jennifer and F.M. told her. Moses argues these out-of-court statements violated his right to confrontation under *Crawford*. In treating Jennifer's injuries, the emergency room physician, Dr. Warren Appleton, interviewed and examined Jennifer. Jennifer told Dr. Appleton that her husband assaulted her and she complained of neck and jaw pain. Dr. Appleton testified that Jennifer's jaw was broken "through and through,"[13] that her broken jaw was caused by more than one blow and that her injuries were not consistent with falling. Dr. Appleton testified that Jennifer appeared frightened. Because of the domestic nature of the assault, Dr. Appleton referred Jennifer and her sons to a social worker as part of treatment. The hospital social worker, Tamara Muller, interviewed the boys and Jennifer as part of the treatment plan.

■ ■ ¶19 Under ER 803(a)(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible. For statements to be admissible under ER 803(a)(4), the declarant's apparent motive must be consistent with receiving treatment, and the medical provider must reasonably

---

[12] The State argues that because Jennifer's statement to the police officer was an excited utterance, it is therefore implicitly not testimonial. Although some courts have found this argument persuasive, Washington courts have declined to adopt this approach. *See Davis*, 154 Wn.2d 291 (statement admitted as an excited utterance contained both testimonial and nontestimonial elements); *Powers*, 124 Wn. App. at 99-101 (911 call admitted as an excited uttereance was testimonial); *c.f. People v. Corella*, 122 Cal. App. 4th, 461, 469, 18 Cal. Rptr. 3d 770 (2004); *Hammon v. State*, 829 N.E.2d 444, 453 (Ind. 2005).

[13] RP (Oct. 16, 2003) at 39.

rely on the information for diagnosis or treatment. *State v. Lopez*, 95 Wn. App. 842, 849, 980 P.2d 224 (1999). Although statements attributing fault are generally not relevant to diagnosis or treatment, this court has found statements attributing fault to an abuser in a domestic violence case are an exception because the identity of the abuser is pertinent and necessary to the victim's treatment. *State v. Sims*, 77 Wn. App. 236, 239-40, 890 P.2d 521 (1995) (victim's statements to ER doctor and social worker were admissible where victim identified her boyfriend as the person who broke her jaw).

¶20 Courts that have addressed *Crawford*'s impact on statements admitted under the medical diagnosis and treatment exception focus on the purpose of the declarant's encounter with the health care provider. In *State v. Fisher*, 130 Wn. App. at 13, the court held that the statement made by a victim of child abuse to a physician was not testimonial. The victim made the statement the morning after the assault, when the physician asked the child what happened. In concluding the victim's statement was not testimonial, the court noted that the doctor was not a government employee and there was no indication of a purpose to prepare testimony for trial. *Fisher*, 130 Wn. App. at 13. In *State v. Vaught*, 268 Neb. 316, 325-26, 682 N.W.2d 284 (2004), the Nebraska Supreme Court held that a four-year-old's identifying statements to a doctor were not testimonial. The court determined that the only purpose of the medical examination was to provide medical treatment and there was no indication of a purpose to develop testimony for trial. *Id.* at 326. Similarly, in *State v. Scacchetti*, 690 N.W.2d 393, 396 (Minn. Ct. App. 2005), the court held a statement made by a three-year-old victim of sexual abuse to a nurse was not testimonial. The victim's statement was in response to the nurse's question about whether anything happened. The court noted that the nurse sought information to provide a medical diagnosis and was not working on behalf of, or in conjunction with, investigating police officers or other government officials for the purpose of developing testimony for prosecution. *Id.*

¶21 In cases where courts have found statements to health care providers are testimonial, the prosecutorial purpose of the medical examination has been clear. *People v. Vigil*, 104 P.3d 258, 265 (Colo. Ct. App. 2004); *In re T.T.*, 351 Ill. App. 3d 976, 993, 815 N.E.2d 789, 801 (2004). In *Vigil*, the case relied on by Moses, a seven-year-old child made a statement identifying the perpetrator of a sexual assault to a doctor. 104 P.3d at 265. The court in *Vigil* found the victim's statement was testimonial because the doctor was a member of a child protection team that provided consultation services in cases of suspected child abuse, and the doctor performed a "forensic sexual abuse examination." *Id.* In *T.T.*, the court held that the victim's statement identifying the perpetrator was testimonial because the medical examination was done six months after the assault, for the purpose of pursuing a prosecution. 351 Ill. App. 3d at 993. *See also People v. Sisavath*, 118 Cal. App. 4th 1396, 13 Cal. Rptr. 3d 753 (2004); *Snowden v. State*, 156 Md. App. 139, 846 A.2d 36 (2004).

¶22 This case is more similar to *Fisher* and *Vaught*. Jennifer was taken to the emergency room of the hospital shortly after the assault for serious injuries. The ER doctor, Dr. Appleton, testified that he questioned Jennifer in order to provide treatment. Dr. Appleton examined Jennifer and asked her what had happened and then ordered x-rays of Jennifer's jaw. And unlike *Vigil* and *T.T.*, the purpose of Dr. Appleton's examination was for medical diagnosis and treatment of Jennifer's significant injuries. Dr. Appleton had no role in the investigation of the assault and he was not working on behalf of or in conjunction with the police or governmental officials to develop testimony for the prosecution. There is also nothing in the record to indicate Jennifer believed or had reason to believe that her statements to Dr. Appleton would be used at a subsequent trial. We conclude that Jennifer's statements to Dr. Appleton were not testimonial under *Crawford*.

*Statements to the Social Worker*

■ ¶23 An out-of-court statement to a social worker is also admissible if made in the course of diagnosis and treatment. *Sims*, 77 Wn. App. at 239-40. Two post-*Crawford* cases have addressed statements to social workers, each holding that the statements were testimonial. *T.T.*, 351 Ill. App. 3d at 989-90; *Snowden*, 156 Md. App. at 157. In both *T.T.* and *Snowden*, the social workers were interviewing children on behalf of the State for the express purpose of gathering evidence for a future prosecution or developing the children's testimony for prosecution.

■ ¶24 Here, the hospital social worker, Muller, testified that while Jennifer was sleeping off the effects of the pain medication, she interviewed the children. F.M. told Muller that he saw Moses kick Jennifer. Both children reported regular fights between Moses and Jennifer that caused them to hide under their beds. After talking to the children, Muller called CPS to report the assault. When Jennifer woke up, Muller interviewed her. Muller testified that Jennifer was initially reluctant to talk about the assault, but was generally cooperative. Jennifer identified Moses as her assailant and told Muller that Moses kicked her in the jaw. At some point during the interview, Muller told Jennifer that she had contacted CPS to report domestic violence.

¶25 Because the trial occurred prior to the Supreme Court's decision in *Crawford*, the record is not clear when Jennifer identified Moses as her assailant during the course of the interview with Muller. Nor is it clear when Muller told Jennifer that she had contacted CPS. Like Dr. Appleton, Muller was providing treatment to Jennifer and statements in that context are not testimonial. *Sims*, 77 Wn. App. at 239-40. But once Muller told Jennifer that she had contacted CPS, Jennifer would have been aware of the potential implications of her statements to Muller, and, under those circumstances, Muller's testimony about Moses' assault could be impermissible testimonial hearsay under *Crawford*.

¶26 The State contends that F.M.'s statement to the social worker is not testimonial hearsay because it was not offered to prove the truth of the matter asserted. The *Crawford* Court explicitly excluded testimonial statements that were not introduced for the truth of the matter asserted from a confrontation clause analysis. *Crawford*, 541 U.S. at 59 n.9. At trial, the State asked Muller why she contacted CPS. Muller testified that she contacted CPS because F.M. told her that his dad kicked his mom. We conclude that F.M.'s statement was not introduced for the truth of the matter asserted, but to show why Muller contacted CPS. F.M.'s statement did not implicate *Crawford*, and the trial court did not err in admitting this testimony.

*Harmless Error*

¶27 Moses argues that admission of Jennifer's out-of-court testimonial statements to the police and the social worker was not harmless error. We disagree.

¶28 Violation of a defendant's rights under the confrontation clause is constitutional error. *State v. McDaniel*, 83 Wn. App. 179, 187-88, 920 P.2d 1218 (1996) (citing *Harrington v. California*, 395 U.S. 250, 251-52, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969)). It is well established that constitutional errors, including violations of a defendant's rights under the confrontation clause, may be harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) (citing *Harrington*, 395 U.S. at 251-52); *Davis*, 154 Wn.2d at 304. "The correct inquiry is whether, assuming that the damaging potential of the [testimony] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). The reviewing court must look at the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *Davis*, 154 Wn.2d at 304.

¶29 The improper testimonial evidence consisted of Jennifer identifying Moses as her assailant in the November 2001 assault and a brief recitation of Jennifer's description of the assault by the officer, who responded to the 911 call and interviewed her. The untainted independent evidence of the 2001 assault includes multiple witnesses who identified Moses as Jennifer's assailant, evidence documenting Jennifer's injuries, and expert testimony that Jennifer's broken jaw was not the result of a slip and fall.[14] The officer responding to the 911 call also described Jennifer's injuries and the scene at the house, including the phone ripped from the wall. In addition, the jury heard testimony about arguments prior to Jennifer's death and an argument four days before that resulted in Moses' arrest on an outstanding warrant for the pending domestic violence charge, as well as heated argument the night of Jennifer's murder. None of this testimony violated *Crawford*. We conclude the untainted evidence leads to a finding of guilt and any error in admitting Jennifer's testimonial statements was harmless beyond a reasonable doubt.

¶30 The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.

Cox, C.J., and GROSSE, J., concur.

Review denied at 157 Wn.2d 1006 (2006).

---

[14] *See* RP (Oct. 22, 2003) at 41, 52, 57 (Renne McCormack, co-worker); RP (Oct. 21, 2003) at 68, 111 (Henry Anderson, friend); RP (Oct. 20, 2003) at 25 (Brian Green, Jennifer's stepfather, reading statement by Moses). RP (Oct. 28, 2003) at 13 (Barbara Alexander, from mental health treatment reports).