# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,     )

                            )    No. 67414-5-I

         Respondent,    )

                            )    DIVISION ONE

         v.                )

                            )    UNPUBLISHED OPINION

BRANDON DOUGLAS ROBERTS,    )

                            )

         Appellant.    )    FILED: April 22, 2013

GROSSE, J. — Under ER 803(a)(4), a statement made for the purpose of medical diagnosis or treatment is admissible as an exception to the hearsay rule. Here, the defendant's statements made to a nurse, physician, and social worker were all made for the purpose of medical diagnosis and were therefore properly admitted.

## FACTS

Investigating a possible hit and run accident, police arrived at the home of Brandon Roberts' parents, Steven and Kristie Hanson. Steven had telephoned the police that he thought his son was involved in an accident. When the police arrived, Roberts fled. While the officers were searching for Roberts, Kristie showed police red marks and bruising on the neck of Melissa Cole, Roberts' girlfriend. The police spoke with Cole and then arrested Roberts for felony assault.

Cole was treated by paramedics at the scene. Kristie testified that she encouraged Cole to go to the hospital because both the police and paramedics said she should go. At the hospital Cole was evaluated by nurse Kerry Groves. In response to Groves' questions, Cole stated that she had been choked by her

boyfriend. She complained of pain in the right side of her neck and in her cheek. Cole was then seen by Dr. Neil Donner, who also testified that Cole stated she had been choked and struck in the face by her boyfriend. Cole was next seen by a social worker who also testified that Cole stated she was choked by her boyfriend after they had an argument.

Roberts did not testify. Roberts' telephone calls made from jail were admitted. One of those calls was to Cole after he was charged with second degree assault. On the recording, Roberts asks, "[W]hat's going on?" Cole responded, "[Y]ou choked me, you choked me really hard." Roberts then stated, "[D]on't say that on the phone." Cole did not testify at trial.

The jury found Roberts guilty of second degree assault. The court sentenced him to a standard range sentence of six months confinement.

Roberts appeals. He contends that the court erred in admitting Cole's prior statements to an emergency room nurse, a physician, and a social worker on the grounds that the statements were made for the primary purpose of medical diagnosis or treatment. Roberts contends Cole's statements were not for medical diagnosis because they were made seven or more hours after the incident and treatment by paramedics at the scene, and only after Cole had signed a release of medical records form given to her by the police.

ANALYSIS

Under the Sixth Amendment, a defendant is guaranteed the right to confront witnesses against him.[1] Admission of testimonial hearsay violates a

---

[1] U.S. CONST. amend. VI.

defendant's Sixth Amendment right of confrontation unless the witness is unavailable and there was a prior opportunity to cross-examine with regard to the statement.[2] It is essential to determine whether the statement is testimonial or nontestimonial to determine whether it is subject to the limitations of the confrontation clause. The United States Supreme Court did not provide an authoritative definition of "testimonial" in Crawford v. Washington;[3] however, in Davis v. Washington, the Supreme Court did distinguish hearsay elicited in the context of a police interrogation from that arising in other settings.[4] The Davis Court held that a domestic abuse victim's statement identifying her assailant to a 911 operator in response to that operator's questions was not testimonial, where the assailant was allegedly in the victim's home in violation of a no-contact order. Davis characterized the statement as nontestimonial because the questioning was done to enable police response to an ongoing emergency. The court held that when the police are responsible for procuring a statement, confrontation clause analysis requires the examination of the "primary purpose" of the interrogation. Under this analysis, a statement will be considered to be "testimonial" if the police questioned the declarant in order to obtain evidence for the prosecution, as opposed to the need to meet an ongoing emergency.

In State v. O'Cain, we noted that the United States Supreme Court has recently portrayed statements to medical personnel for purposes of diagnosis or

---

[2] Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).
[3] 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).
[4] 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

treatment as nontestimonial.[5]  Under ER 803(a)(4), a statement made for the purpose of medical diagnosis or treatment is admissible as an exception to the hearsay rule.  Roberts contends that statements Cole made to a nurse, an emergency physician, and a social worker were inadmissible hearsay statements because there was no foundation establishing that the statements were necessary for medical diagnosis or treatment, but rather done in furtherance of a police prosecution.

Washington courts recognize that in cases of child abuse and domestic violence, attributing fault to a particular abuser is relevant to medical diagnosis and treatment.[6]  In Sims, the court held that an assault victim's statements to a social worker that the defendant was the person who assaulted her were reasonably pertinent to her treatment, where the social worker testified that the medical center had a policy of referring domestic violence victims to the social work department and the social worker discussed a treatment plan with her that included how to avoid threatening situations.[7]

---

[5] 169 Wn. App. 228, 279 P.3d 926 (2012); see Michigan v. Bryant, __ U.S. __ 131 S. Ct. 1143, 1157 n.9, 179 L. Ed. 2d 93 (2011) (listing "Statements for Purposes of Medical Diagnosis or Treatment" under federal rule of Evidence 803(4) as an example of statements that are, "by their nature, made for a purpose other than use in a prosecution") and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527, 2533 n.2, 174 L. Ed. 2d 314 (2009) (discussing cited cases: "Others are simply irrelevant, since they involved medical reports created for treatment purposes, which would not be testimonial under our decision today.).

[6] See State v. Sims, 77 Wn. App. 236, 239-40, 890 P.2d 521 (1995); State v. Butler, 53 Wn. App. 214, 766 P.2d 505 (1989).

[7] 77 Wn. App. 236, 240, 890 P.2d 521 (1995).

Washington courts have also held that statements made to medical personnel by victims of domestic violence are not testimonial.[8] In State v. Sandoval, the court held that the identification of the perpetrator in domestic violence cases is admissible since that person's identity may affect the treatment for the victim-witness.[9] In Sandoval, the court held that statements to a medical doctor were not testimonial if (1) they were made for purposes of diagnosis and treatment, (2) there is no indication that the witness expected the statements to be used at a trial, and (3) the medical caregiver is not employed by or working with the prosecution.[10] And in State v. Moses, the trial court admitted the physician's and the social worker's testimony regarding the victim's declarations.[11] The physician testified that the medical examination took place within hours of the assault and the physician asked questions to provide treatment.[12] In determining whether statements made to health care providers are testimonial, the focus of the inquiry is on the purpose of the declarant's encounter with the health care provider.[13] In Moses, where the doctor had no role in investigating the assault and was not working on behalf of or in conjunction with the police or other governmental officials to develop testimony for the prosecution, the circumstances indicated that the victim's statements were made for the purpose of obtaining medical treatment for the victim. Here, Cole, as the declarant, was seeking medical treatment. Roberts' mother testified that

---

[8] State v. Moses, 129 Wn. App. 718, 728-30, 119 P.3d 906 (2005).
[9] 137 Wn. App. 532, 537, 154 P.3d 271 (2007).
[10] Sandoval, 137 Wn. App. at 537.
[11] 129 Wn. App. 718, 730-32, 119 P.3d 906 (2005).
[12] Moses, 129 Wn. App. at 730.
[13] Moses, 129 Wn. App. at 730.

she encouraged Cole to seek additional medical treatment, as did the police and the paramedics who treated Cole at the scene.

The nurse, Kerry Groves, testified about statements Cole made to her upon her arrival at the emergency room. Groves further testified that she worked in the emergency room triaging patients and that her job was to obtain a full history from a patient about what occurred. She also explained that she uses this information to assess patients and work with doctors and social workers to come up with a treatment plan for the patient. Groves then testified about her specific interaction with Cole and stated that she observed visible injuries to Cole's neck and face and that Cole said she received the injuries when her boyfriend choked her with his hands. Clearly, the statements to the nurse were made for the purpose of medical diagnosis and, as in Sims, would allow hospital providers to assess the types of treatment plans or resources that would be appropriate for the patient. The nurse's statements were properly admitted.

Cole's statements to the treating physician, Dr. Neil Donner, likewise fall within the parameters of the medical diagnosis hearsay exception. Dr. Donner testified that he asked Cole what had happened and she responded that she had been assaulted, choked by her boyfriend with his hands. Dr. Donner remembered asking if she was put into a choke hold or was strangled with hands. He also testified that Cole exhibited external signs of trauma on the front of her neck, although that in itself was insufficient to substantiate that it occurred through strangulation. Cole also complained of pain on the left side of her face where she was struck by her boyfriend. Cole was referred to a social worker for

a consultation. Dr. Donner's job was to address any medical concerns and the referral to the social worker was to address all the other facets, including the emotional aspects of the alleged assault and the patient's future safety. Thus, the doctor's testimony was clearly admissible.

Finally, the social worker, Nathan Nelson, testified that he worked with the doctors and nurses on cases involving social issues such as domestic violence. Nelson testified that medical personnel referred patients to him for safety and any follow-up care that might be needed. Cole told Nelson that she had been assaulted by her boyfriend. In response to what Nelson's ultimate goal was, he responded:

> Basically, I want to -- I'm getting a report from her so if the police need that report for later purposes, and also to contact police if they haven't been contacted.

But Nelson also testified that he was concerned about Cole's future safety and whether she had a safe place to be. As in Sims, the statements here were made to medical personnel who testified that the triage protocol included obtaining information that would allow hospital providers to assess what types of treatment plans or resources would be appropriate for the patient. The statements made to Nelson were for Cole's medical diagnosis and treatment and were properly admitted.[14]

Roberts also argues that the medical release form signed by Cole changed the purpose of her statements from seeking medical treatment to aiding

---

[14] Even if we were to find Nelson's testimony suspect because of his reference to compiling a possible report for the police, any error in its admission was harmless. See State v. Nist, 77 Wn.2d 227, 235, 461 P.3d 322 (1969) (Evidence that is merely cumulative of convincing untainted evidence is harmless.).

the prosecution. Other than this form, which is not in the record, there is nothing to indicate that Cole went to the hospital to offer evidence for the purpose of prosecuting Roberts. The nurse, doctor, and social worker all testified that their concern was the treatment and safety of Cole. The doctor's testimony that he inquired into the type of strangulation that occurred was clearly for medical diagnosis. There is no evidence that Cole thought her statements would be used to initiate a criminal prosecution. The signing of the medical release form is not sufficient to overcome this, especially here, where the form was not admitted as an exhibit at trial and, when viewed by the trial court during argument objecting to the testimony, was characterized by the court as a typical form used in all cases involving crime victims.

Affirmed.

WE CONCUR: