# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69918-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| NEGATU ABEBE FENTAHUN, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 18, 2014 |
| | ) | |

LEACH, J. — Negatu Fentahun appeals his conviction for assault in the second degree. He claims that the trial court violated his confrontation clause rights by admitting a tape of a 911 call and statements that a nontestifying witness made to an emergency room social worker. Fentahun also challenges the admission of this nontestifying witness's statements under ER 803(a)(4) because the witness did not make these statements for the purpose of his own medical diagnosis or treatment. Because Fentahun fails to show that the admission of the challenged evidence was improper, we affirm.

## FACTS

On July 13, 2010, Fentahun got into an argument with his 28-year-old sister, Wosenyelesh, at their residence. When Fentahun jumped forward and hit Wosenyelesh on the head, she fell down. He then jumped on her back, grabbed her head, and struck her multiple times in the face with a closed fist. Fentahun then fled the residence.

Fentahun and Wosenyelesh's brother Amanuel witnessed the incident. Amanuel called 911. When the 911 operator asked what happened, Amanuel stated, "See my brother beat up my sister so bad, her two teeth went out, and she got like a big eye uh a eye swollen," and also stated, "Please hurry up okay." He told the operator, "She's awake, but she like blacked out. You could . . . she needs help right now please." He also stated that the incident occurred "[l]ike three, four minute ago" and that Fentahun had run away. Amanuel provided Fentahun's name and description and told the 911 operator that Fentahun had no weapons.

Wosenyelesh lost one tooth and two others remained loose in her mouth. She had swelling and bleeding around her mouth and around her left eye. She also had a cut underneath her left eye.

Paramedics transported Wosenyelesh to Harborview Hospital before police arrived. Amanuel rode in the ambulance to Harborview.

At Harborview, Wosenyelesh and Amanuel spoke with emergency room social worker Annie Drummond. Amanuel told Drummond about the events that he witnessed and that he tried to intervene but was unable to do so. After speaking with Drummond, Amanuel called the Seattle Police Department to file a report.

On July 19, 2010, Fentahun arrived at the police precinct and stated that his family told him police were looking for him. Fentahun told a police officer that his sister walked up behind him while he was arguing with his mother. When he

turned around, his head collided with his sister's, and she fell onto a chair and hit her mouth. Fentahun told the officer that he was so mad after the argument with his mother that he left the house. The officer believed that Fentahun was describing the July 13 incident and asked him for identification. Police arrested Fentahun.

The State charged Fentahun with assault in the second degree with a special allegation of domestic violence. Wosenyelesh did not appear at trial, and Amanuel did not testify. A jury convicted Fentahun as charged, and the court imposed a standard range sentence.

Fentahun appeals.

## STANDARD OF REVIEW

We review alleged confrontation clause violations de novo.[1] We apply a harmless error analysis.[2] The error is harmless if, considering the untainted evidence, we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error.[3] We presume that the error is prejudicial, and the State bears the burden of proving beyond a reasonable doubt that the error did not contribute to the jury's verdict.[4]

---

[1] State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

[2] State v. Fraser, 170 Wn. App. 13, 23, 282 P.3d 152 (2012) (citing Jasper, 174 Wn.2d at 117), review denied, 176 Wn.2d 1022 (2013).

[3] Fraser, 170 Wn. App. at 23 (quoting State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985)).

[4] Fraser, 170 Wn. App. at 23-24 (citing Guloy, 104 Wn.2d at 425; Jasper, 174 Wn.2d at 117).

We review decisions on the admissibility of evidence under an abuse of discretion standard.[5] An abuse of discretion exists "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons."[6] A discretionary decision "is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard."[7]

ANALYSIS

Fentahun claims that the trial court should have excluded as testimonial hearsay a tape of the 911 call and Amanuel's statements to Drummond.[8] Under the federal confrontation clause, a criminal defendant has the right to confront and to cross-examine adverse witnesses.[9] The confrontation clause bars the admission of "testimonial" hearsay unless the declarant is unavailable to testify and the defendant had an earlier opportunity to cross-examine the declarant.[10]

---

[5] State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997).

[6] Stenson, 132 Wn.2d at 701 (citing State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

[7] State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

[8] The trial court admitted a transcript of the 911 call for illustrative purposes.

[9] U.S. CONST. amend. VI; Douglas v. Alabama, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). The Sixth Amendment applies to the states through the due process clause of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[10] Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

This guarantees an adequate opportunity for effective cross-examination.[11] The prosecution has the burden to establish that statements are not testimonial.[12]

Although Washington courts have not adopted a comprehensive list of what qualifies as a testimonial statement, the courts have found that statements are testimonial in nature "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[13] "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."[14]

To help decide if statements are not testimonial, the court considers (1) if the speaker was speaking about past events or current ones, as they occurred, requiring police assistance; (2) if a reasonable listener would conclude that the speaker was facing an ongoing emergency that required help; (3) the nature of

---

[11] Davis v. Alaska, 415 U.S. 308, 316-18, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); State v. Hudlow, 99 Wn.2d 1, 15-16, 659 P.2d 514 (1983). "Bias is . . . the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." United States v. Abel, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984).

[12] State v. O'Cain, 169 Wn. App. 228, 235, 279 P.3d 926 (2012).

[13] Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

[14] State v. McWilliams, 177 Wn. App. 139, 156, 311 P.3d 584 (2013) (citing State v. Koslowski, 166 Wn.2d 409, 418, 209 P.3d 479 (2009)), review denied, 179 Wn.2d 1020 (2014).

the questions asked and answered; and (4) the interrogation's formality.[15]  A conversation can contain both testimonial and nontestimonial statements.  A conversation to learn about any need for emergency assistance can become testimonial when the emergency appears to have ended or the information necessary to meet the emergency has been obtained.[16]  Witness statements to a medical doctor are not testimonial, and their admission does not violate the confrontation clause (1) when made for the purpose of diagnosis and treatment, (2) when no evidence indicates that the witness expected the statements to be used at trial, and (3) when the doctor is not employed by or working with the State.[17]

Fentahun claims that the trial court should have excluded the 911 call as testimonial hearsay because a conversation that "began to determine the need for emergency assistance" "quickly evolved into testimonial statements divorced from getting medical help for the caller's sister.  At that point the circumstances objectively indicate the primary purpose was is [sic] to establish or prove the facts of a past crime in order to identify the perpetrator."  He argues that the caller described a past event.  He claims that the caller "was only asked a couple of questions regarding [Wosenyelesh]'s medical condition.  He was asked if she needed a medic and whether she was conscious" and asserts, "The rest of the

---

[15] Koslowski, 166 Wn.2d at 418-19.
[16] Koslowski, 166 Wn.2d at 419 (citing Davis, 547 U.S. at 828).
[17] State v. Sandoval, 137 Wn. App. 532, 537, 154 P.3d 271 (2007) (citing State v. Moses, 129 Wn. App. 718, 729-30, 119 P.3d 906 (2005)).

questions were related to the incident and identity of the assailant. The questions and the answers that were elicited were not necessary to resolve a present emergency." Fentahun also alleges that because the caller told the 911 operator that the assailant had left and had no weapons, no ongoing emergency existed. He contends that "the questioning was less formal than a face-to-face interrogation with police, the questions were pointed and direct. Few of the caller's statements were spontaneous, and the caller was speaking from a place of safety."

We reject Fentahun's arguments and conclude that the statements in the 911 call were not testimonial. First, the record indicates that the caller sought medical help as a result of an incident that occurred "[l]ike three, four minute[s] ago." A speaker may speak contemporaneously of past events if the speaker connects the past events with ongoing ones.[18]

Second, courts recognize two ways that an ongoing emergency may exist: first, if the crime is still in progress and, second, if the victim is in danger, either because of the need for medical assistance or because the defendant poses a threat.[19] Although the caller reported that Fentahun ran away and had no weapons, a reasonable listener could conclude that an ongoing emergency

---

[18] Koslowski, 166 Wn.2d at 422-23 n.8 ("[I]t is not inconsistent to speak of past events in conjunction with an ongoing emergency and, in appropriate circumstances, considering all of the factors the Court identified [in Davis], the fact that some statements are made with regard to recent past events does not cast them in testimonial stone.").

[19] Koslowski, 166 Wn.2d at 419 n.7 (citing State v. Shea, 184 Vt. 453, 460, 965 A.2d 504 (2008)).

existed based on the caller's statements: "[M]y brother beat up my sister so bad, her two teeth went out, and she got like a big eye uh a eye swollen"; "Well my brother beat up my sister so bad so she need a paramedic right now"; and "She's awake, but she like blacked out. You could . . . she needs help right now please." These statements show a concern for Wosenyelesh's well-being because of her need for medical assistance.

Third, the caller focused on his sister's need for medical attention. He did not volunteer information about the assailant but provided the description only in response to the 911 operator's questions. The caller discussed no facts about the assault and did not ask police to pursue or to prosecute the assailant. Although, when viewed in isolation, the questions about the incident and the assailant's identity appear as an attempt to elicit testimony, the sequence of questions indicates that the 911 operator asked the questions to determine if police would "be encountering a violent felon" when responding and how they might resolve the situation.[20]

Fourth, interactions with 911 operators are typically informal.[21] The caller's statements, some of which appear emphatic, show concern about getting medical help for his sister. He made these statements from the location where the assault took place, which was not secure. Given these facts, the caller's statements share nothing with the formality that customarily attends testimony.

---

[20] See Davis, 547 U.S. at 827.

[21] Davis, 547 U.S. at 827 (contrasting the solemnity of a formal police interrogation with a 911 call).

The caller's statements in the 911 call were not testimonial because, viewed objectively, the circumstances show a call for emergency assistance rather than a mere report of a crime. We conclude that the trial court did not violate Fentahun's right to confrontation by admitting the 911 call.

Fentahun also claims that admitting Amanuel's statements to Drummond violated his right of confrontation because Amanuel did not make these statements for the purpose of his own medical diagnosis or treatment or for the purpose of diagnosing or treating Wosenyelesh. Fentahun argues, "A reasonable person in Amanuel's position would anticipate that telling a hospital social worker that his brother assaulted his sister, that he tried to stop the assault, and that he called police, that his statement would be used to either investigate or prosecute the alleged assault."

Drummond conducted her interview and wrote her notes on the day of the assault, shortly after Amanuel and Wosenyelesh arrived in the emergency room. At trial, she testified that in her role as an emergency room social worker she provides crisis intervention for families and becomes their advocate with the medical staff. Because this case involved domestic violence and "it appeared that there were witnesses to what had happened," she understood that her job was to "make sure that not only [Wosenyelesh] got the appropriate support and more long term counseling related to that, but that there would be services for the family as well."

Drummond interviewed Amanuel to be able to provide appropriate treatment to Wosenyelesh and other members of their family. No evidence shows that Drummond had a role in investigating the assault, that she shared her notes with police when they arrived, or that she prepared the notes in the form of an extrajudicial sworn or certified statement to be used as a substitute for testimony in court. Nothing in the record indicates that police were present when Drummond spoke with Amanuel or that Drummond was working on behalf of or in conjunction with the police or governmental officials to develop testimony for the prosecution. And no evidence shows that Amanuel believed or had reason to believe that his statements to Drummond would be used at a subsequent trial to establish Fentahun's culpability. Drummond also testified that the fact the incident involved domestic violence affected diagnosis and treatment.[22] Therefore, these statements were not testimonial, and their admission did not violate Fentahun's confrontation clause rights.

Fentahun also claims that Amanuel's statements to Drummond were not admissible under ER 803(a)(4) because Amanuel "was not the patient making a statement for the purpose of his medical diagnosis or treatment, and [Wosenyelesh] was able to communicate her own medical concerns." He also alleges that "the State failed to show [Wosenyelesh] incapable of expressing her concerns to Drummond."

---

[22] See Sandoval, 137 Wn. App. at 538.

ER 803(a)(4) states that a statement is not hearsay if it is "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." A party seeking to admit a statement under ER 803(a)(4) must show that the declarant's apparent motive was consistent with receiving treatment and that the medical provider reasonably relied upon the information for diagnosis or treatment.[23] A statement attributing fault to an abuser made in a domestic violence case is relevant to diagnosis and treatment because the abuser's identity may affect the witness's treatment.[24] An out-of-court statement made to a social worker is admissible if made in the course of diagnosis and treatment.[25]

Fentahun cites no authority holding that ER 803(a)(4) applies only to statements describing the patient's own symptoms or medical history. In State v. Justiniano,[26] the court admitted a parent's statements to a physician about a child's needs, reasoning that "children of tender years are incapable of expressing their medical concerns to physicians." In State v. Woods,[27] the court admitted under ER 803(a)(4) an assault victim's statements to a physician and a

---

[23] State v. Doerflinger, 170 Wn. App. 650, 664, 285 P.3d 217 (2012) (quoting In re Pers. Restraint of Grasso, 151 Wn.2d 1, 20, 84 P.3d 859 (2004)), review denied, 177 Wn.2d 1009 (2013).

[24] Sandoval, 137 Wn. App. at 537 (citing Moses, 129 Wn. App. at 729).

[25] Moses, 129 Wn. App. at 731 (citing State v. Sims, 77 Wn. App. 236, 239-40, 890 P.2d 521 (1995)).

[26] 48 Wn. App. 572, 581, 740 P.2d 872 (1987).

[27] 143 Wn.2d 561, 601, 23 P.3d 1046 (2001).

nurse's description of assaults upon herself and the patient. In Woods, the court explained that it was reasonably pertinent to the patient's treatment "that her medical providers be apprised of the physical position [the patient] was in at the time when her attack occurred."[28]

Drummond testified that she was unable to communicate effectively with Wosenyelesh because of the injuries to Wosenyelesh's mouth. At trial, Drummond testified, "I attempted to interview [Wosenyelesh], and in my note I state that her voice was soft and meek when she speaks, and she's unable to say more than two words because her teeth are so loose in her mouth." Drummond also stated, "She was alert, conscious, she was not sedated. She was—she had tried to engage with me in conversation and was unable to based upon her mouth injury." When asked how she communicated with Wosenyelesh, Drummond testified,

> So she had a brother—well, she had other family members there with her too. My very first interaction with her was to actually bring back, . . . I believe it was another brother and her parents and brought them back. But the brother who was at bedside then was Amanuel who had witnessed and intervened in the assault.

Drummond stated that during the conversation with Amanuel, she did not recall anyone else being present in the room besides Wosenyelesh.

Amanuel had firsthand knowledge about the incident that took place and about the cause of Wosenyelesh's injuries. It was also pertinent to Wosenyelesh's treatment that the incident was one involving domestic violence

---

[28] Woods, 143 Wn.2d at 603.

because of the need to prevent a recurrence.[29]  Fentahun cites no evidence demonstrating that Amanuel's motive in providing these statements to Drummond was to investigate or to prosecute him.  Because the record shows that Amanuel's motive appeared consistent with seeking proper medical treatment for Wosenyelesh, the trial court did not abuse its discretion when admitting this evidence.

## CONCLUSION

Because Amanuel's statements in the 911 call and to Drummond were not testimonial and were made for the purpose of providing medical treatment to Wosenyelesh, we affirm.

_Leach, J._

WE CONCUR:

_Trickey, J_

_Cox, J._

---

[29] State v. Ackerman, 90 Wn. App. 477, 482, 953 P.2d 816 (1998) (quoting State v. Butler, 53 Wn. App. 214, 221, 766 P.2d 505 (1989)).