

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON , | ) | No. 74113-6-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| SIMION MARTINEZ, | ) ) | |
| Appellant. | ) ) | FILED: January 17, 2017 |
| | ) | |

APPELWICK, J. — During Martinez's trial for second degree assault, his counsel objected on hearsay grounds to testimony identifying Martinez as the assailant. For the first time on appeal, Martinez contends the testimony violated his right to confront the witnesses against him. This contention cannot be raised for the first time on appeal. We affirm.

## FACTS

Based on allegations that Martinez punched Cesar Bustillo-Diaz during a wake at a Burien apartment complex, the State charged him second degree assault.

At trial, King County Sheriff's Deputy Andrew Weekley testified that on April 13, 2015, he responded to a report of a disturbance at an apartment complex. When he arrived, "there w[ere] tons of people outside just kind of mingling around." One man, Cesar Bustillo-Diaz, was bleeding from his face. Concerned that "somebody else might be injured" and/or that the "suspect might be there," Deputy Weekley

began speaking to the crowd "trying to figure out if the bad guy was still there, any other victims, who saw it, just trying to get any information I could."

The prosecutor inquired whether Weekley was able to obtain the suspect's name from the crowd:

[PROSECUTOR:] Okay. Did the information you gathered from them help you identify who the suspect was?

[DEPUTY WEEKLEY:] Yes.

[PROSECUTOR:] Did you eventually get a name?

[DEPUTY WEEKLEY:] Yes.

[PROSECUTOR:] And what was that name?

[DEFENSE COUNSEL]: I'm going to object, it's hearsay.

[PROSECUTOR]: For identification.

[DEFENSE COUNSEL]: But it's not -- he's not the one who's doing the Identifying.

[DEPUTY WEEKLEY:] A possible suspect.

THE COURT: Your further comment regarding the objection, Mr. Kim?

[PROSECUTOR]: It's for identification.

THE COURT: The objection will be overruled.

(Emphasis added.)

When the prosecutor asked for "the possible suspect's name that you gathered from this crowd," Deputy Weekley testified:

I can't give you the exact [name]. . . . I remember it being a close match to the person, and that happens all the time. We'll get, you know, Andre Weekley for me, and so I put in A. Weekley in our little search, and it would come back Andy Weekley or Andrew Weekley. And I go, hey, that's – that's a possibility. Ages match, you know, sexes match. So I don't know the exact name and date of birth I

- 2 -

had originally, but through our databases we were able to come up with the name of Simon Martinez.

Defense counsel objected again:

> [DEFENSE COUNSEL]: I'm going to <u>object and move to strike</u>. Now he's not -- the question -- or -- and it's also <u>nonresponsive</u>. The question was what information he got from the people there, and now he's telling about information he got from his databases.
>
> THE COURT: <u>Sustained. Redirect the witness</u>.
>
> [PROSECUTOR]: I will, Your Honor.

[PROSECUTOR:] Did you get information from these witnesses?

[DEPUTY WEEKLEY:] Yes.

[PROSECUTOR:] Did that eventually lead to a name of a suspect?

[DEPUTY WEEKLEY:] Yes.

[PROSECUTOR:] <u>What was the name of that suspect</u>?

[DEPUTY WEEKLEY:] Sorry, <u>Simon Martinez</u>.

> [DEFENSE COUNSEL]: I'm going to object again.
>
> [PROSECUTOR]: It's already been ruled on, your Honor.
>
> THE COURT: Just a second. <u>What is the objection now</u>?
>
> [DEFENSE COUNSEL]: Well, <u>he's giving information</u> that maybe came from some other source <u>that's hearsay</u>, and he's saying eventually, and it's still nonresponsive to the question.
>
> THE COURT: <u>Objection overruled. Exception to the hearsay is identification</u>. You may answer the question. What's the name?

[DEPUTY WEEKLEY:] <u>Simon Martinez</u>.

(Emphasis added.)

- 3 -

Deputy Weekley subsequently clarified he meant "Simion" Martinez. He also testified the information he gathered came from two people in particular, a man who he did not identify and a woman named Gilma Martinez Crisanto.

Bustillo-Diaz testified that he attended the wake. When asked if he recognized Martinez, Bustillo-Diaz said he recognized him from a picture a police officer showed him at the hospital. According to Bustillo-Diaz, Martinez was "so rude . . . and he repeat a lot of times [that] someone [was] going to die." Later, he heard someone running towards him. Bustillo-Diaz pointed at Martinez and said, "I just turn around and see . . . that guy just hit me a lot, a lot of times." He testified that he received 5-7 stitches on his face. He was "positive" when he picked Martinez's photo from the montage and was "certain" that Martinez was the person who assaulted him.

Deputy Weekley's partner, Officer Scott Mandella, generally corroborated Deputy Weekley's testimony about his exchange with the crowd members:

> [PROSECUTOR:] Did you know of a suspect's name before creating the photo lineup?
>
> [OFFICER MANDELLA:] Yes, I did.
>
> [PROSECUTOR:] Okay. How did you obtain that?
>
> [OFFICER MANDELLA:] Deputy Weekley relayed that information to me that was given to him from another witness on scene.

Based on the information he received from Deputy Weekley and Bustillo-Diaz, Officer Mandella created a photo montage and showed it to Bustillo-Diaz. Without hesitation, Bustillo-Diaz picked a photo of Martinez. Officer Mandella testified that prior to showing Bustillo-Diaz the montage, he informed him that

"the person who committed the crime may or may not be in this group of photographs" and that he was "in no way obligated to identify anyone."

Martinez did not testify or call any witnesses. In closing argument, defense counsel argued that the state failed to prove beyond a reasonable doubt that Martinez was the assailant. Counsel pointed out that while Bustillo-Diaz described his attacker as a "black/white mixed race male," Martinez "is not light skinned." Counsel also noted that Bustillo-Diaz initially testified that he recognized Martinez from the pictures police showed him at the hospital and that he had assumed his attacker was among the photos the police showed him.

After three hours of deliberation, the jury informed the court it could not reach a verdict. The court directed the jury to resume deliberating. The jury subsequently returned a guilty verdict. Martinez appeals.

## DECISION

Martinez contends the trial court's admission of hearsay statements violated his right to confrontation under the state and federal constitutions.[1] Specifically, he contends the statements were nontestimonial hearsay and were therefore inadmissible. Martinez does not dispute that this issue is raised for the first time on appeal. The State counters that this challenge can be raised for the first time on appeal via only an ineffective assistance of counsel claim. We agree.

_____

[1] Sixth Amendment of the United States Constitution and Article 1, section 22 of the Washington Constitution.

In State v. O'Cain, 169 Wn. App. 228, 247-48, 279 P.3d 926 (2012), we declined to consider a confrontation clause argument raised for the first time on appeal. At trial, O'Cain objected to evidence on relevance grounds and did not assert a violation of his right to confrontation. We noted that under Melendez–Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), a defendant loses the right to confront witnesses by failing to assert it at trial. Id. We reasoned that if it were not the defendant's burden to object on confrontation grounds, trial judges would be placed in the untenable position of either sua sponte interposing a confrontation objection or knowingly presiding over a trial headed for likely reversal on appeal. Id. at 243. We concluded that objecting on confrontation grounds is a tactical decision for counsel and that, absent such an objection, ER 103 precludes the predication of error on confrontation grounds and trumps RAP 2.5(a)(3) (allowing appellate courts to consider errors, including "manifest error affecting a constitutional right," for the first time on appeal). Id.

We reached the same conclusion in State v. Fraser, 170 Wn. App. 13, 26-27, 282 P.3d 152 (2012). There, the defendant objected to evidence at trial on the ground that it was more prejudicial than probative. Id. at 25. For the first time on appeal, he argued that the evidence violated his right to confrontation. Id. We reaffirmed our decision in O'Cain, holding that Fraser waived his confrontation argument by not objecting on that ground at trial. Id. at 26. We then added an alternative analysis that "[i]f" RAP 2.5(a)(3) is read as a state procedural exception to the objection requirement for confrontation clause errors,

Fraser would still not be entitled to review because he failed to make a showing of manifest constitutional error. Fraser, 170 Wn. App. at 26-27. Fraser is consistent with O'Cain.

Like the defendant in O'Cain, Martinez objected to the challenged evidence at trial, but not on confrontation grounds.[2] Under O'Cain, Martinez waived his confrontation claim and cannot raise it for the first time on appeal. Martinez does not argue that a hearsay objection in the trial court is an exception to the holding in O'Cain and that it is sufficient to preserve a confrontation clause challenge for appeal. To the extent there was any violation of Martinez's right to confrontation below, it was caused by defense counsel's decision not to object on confrontation grounds. The proper challenge on appeal or collateral review would be a claim of ineffective assistance of counsel. See O'Cain, 169 Wn. App. at 245. Martinez does not advance such a claim on appeal.[3]

---

[2] We note that the failure to object on confrontation grounds may deprive the State of an opportunity to create a full record regarding the nature and purposes of the police questioning and the testimonial or nontestimonial nature of the witness's responses. Without a developed record, it may be impossible to determine whether a claimed error is *manifest* constitutional error under RAP 2.5(a)(3). State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (holding that without a developed record a claimed error cannot be manifest and does not satisfy RAP 2 .5(a)(3)); State v. McFarland, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995)(to show that a claimed error is manifest, the trial court record must be sufficiently developed to show actual prejudice).

[3] The State also contends that the challenged evidence "was cumulative and nearly identical to unchallenged testimony by Mandella." The State concludes that because the evidence was cumulative of other evidence, there was no manifest constitutional error under RAP 2.5(a). See Fraser, 170 Wn. App. at 26-29. Martinez did not respond to these arguments.

Martinez requests that we preclude an award of costs to the State under RAP 14.2 on the ground that he is indigent. Appellate courts may require an adult offender convicted of an offense to pay appellate costs. RCW 10.73.160(1). The commissioner or clerk will award costs to the State if the State is the substantially prevailing party on appeal, "unless the appellate court directs otherwise in its decision terminating review." RAP 14.2. We entrust indigency determinations to the trial judge and will defer to a finding of indigency absent a showing of good cause not to do so. State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016). We "give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent." RAP 15.2(f).

The State argues that we should not defer to the trial court's indigency finding in this case, because the order does not contain findings or information about Martinez's future ability to pay. But, Sinclair makes clear that during trial and sentencing, both parties have access to information about "the defendant's age, family, education, employment history, criminal history, and the length of the current sentence" that influence the State's discretionary decision to seek costs. Sinclair, 192 Wn. App. at 391-92. Here, the trial court found Martinez indigent and has not found that his financial condition has improved or is likely to improve. We therefore presume that Martinez remains indigent. The State does not point to anything in the record suggesting that his financial condition is likely to

improve. Although the State notes that Martinez is in his early thirties and received "no additional confinement after sentencing," these facts are insufficient to overcome the presumption of indigency. An award of appellate costs is not appropriate in these circumstances.

Affirmed.

WE CONCUR: