IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75537-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL IAN BURNS | ) | |
| | ) | |
| Appellant. | ) | FILED: January 16, 2018 |

TRICKEY, A.C.J. — Michael Burns requested to proceed pro se while facing charges for assault and felony violation of a no contact order. After a lengthy colloquy, the trial court denied Burns's request because he was unable to knowingly and voluntarily waive his right to counsel. On appeal, Burns claims that the trial court violated his constitutional rights to self-representation and confrontation. He also argues that the trial court erred by determining that his convictions did not encompass the same criminal conduct. Finding no error, we affirm.

## FACTS

Burns was charged with assault in the second degree and felony violation of a no contact order, both with a domestic violence allegation. At the time of charging, Burns had two additional cases pending against him with charges of burglary in the first degree, two felony violations of a no contact order, interfering with reporting of domestic violence, and assault in the second and fourth degrees.

At an early court appearance, Burns raised a general request to relieve counsel and proceed pro se.

Due to the seriousness of the charges, including a strike offense, the trial court strongly advised Burns against representing himself. The trial court deferred a decision and informed Burns that he could file a motion on the issue. The trial court deferred again at a subsequent appearance when Burns informed the court that "Mr. Burns is here to fire his public defender . . . and become pro se as of today."[1] The trial court requested that Burns set a separate hearing for his motion to represent himself.

When the trial court heard the motion to proceed pro se, Burns told the court that he wanted to "go pro se for reasons other than just becoming aware of certain things."[2] Burns said that he wanted to handle his own business because he had been lied to, threatened, and coerced. The trial court probed Burns on his claim. Burns told the court that the "United States" is a corporation and his counsel and the prosecutor had attempted to coerce him to sign a contract with it.[3] Burns wanted to represent himself because he was not a citizen of the corporation and would not be "buying into" the company.[4]

The trial court explained the seriousness of the charges and possible sentences to Burns. Burns responded that the charges and potential sentences did not pertain to him, stating, "I'm not a corporate entity, I'm a human being, and

---

[1] Report of Proceedings (RP) (Jan. 7, 2016) at 12.
[2] RP (Jan. 13, 2016) at 2.
[3] RP (Jan. 13, 2016) at 15.
[4] RP (Jan. 13, 2016) at 15.

I'm not contracted into your place of business. Furthermore, I will not be contracted in your place of business, okay."[5]

The trial court attempted to explain to Burns that the law did not require a contract if a person was accused of a crime, and that a person would be tried in court regardless of their agreement. Burns again replied that the matters did not pertain to him, stating, "I understand that . . . somebody could be charged and sentenced to a serious amount of time for those matters, but like I said, they do not pertain to me and I'm not going to allow this."[6] The court reiterated the seriousness of the crimes charged in the three separate cases pending against Burns, detailed their possible sentences, and explained the potential for concurrent and exceptional sentences.

When the trial court attempted to evaluate Burns's educational background in order to assess his ability to represent himself, Burns said, "I think I'm highly educated enough to represent myself because other than maybe a little looking into a few things about the law I think I can handle it because it's mostly just keeping your composure and acting."[7] The trial court strongly disagreed with Burns's statement, and informed Burns that he would be required to comply with the rules of procedure and evidence and would be held to the same standards as the prosecutor. Burns responded, "I completely understand what is up, what sentencing may occur, all of that stuff. I completely understand all of that and it doesn't phase [sic] me a bit."[8]

---

[5] RP (Jan. 13, 2016) at 6.
[6] RP (Jan. 13, 2016) at 7.
[7] RP (Jan. 13, 2016) at 11.
[8] RP (Jan. 13, 2016) at 13.

After these exchanges with Burns, the trial court asked his counsel if she believed Burns understood the nature of the charges against him and was capable of assisting at trial. Counsel stated that she had spoken extensively with Burns and did not think an evaluation of his competency was necessary. The trial court expressed concerns about whether Burns understood his situation.

> [F]rankly, I am concerned that you don't seem to have a full understanding of the situation you're in because just observing you you've not, you've been very impatient for me to finish describing the charges and potential penalty to you, you've indicated that doesn't matter to you.
>
> . . . .
> . . . You also indicated a belief that there is a corporation involved here that you were required to be involved with and that your not being involved with the corporation has something to do with your, with the fact you're going to have to go to trial. And you've said that you don't believe the charges against you apply to you. I've tried to explain that they very much apply to you.[9]

Burns responded, "It's not a case, Your Honor."[10]

The trial court attempted to explain the situation again.

> You have a trial in those cases because you've been charged with these crimes. So all in all I'm concerned about whether you understand how the criminal system works and what the consequences of criminal charges can be. And if you don't understand how that legal system works and what the results of being charged with a crime can be, you're going to need legal help.[11]

Burns replied, "[M]y understanding is that Mr. Burns is contracted into two cases that have been globalized into one matter, okay. There is a matter at your fingertips that is not a case yet, I have rejected the contract for it to become a case."[12]

---

[9] RP (Jan. 13, 2016) at 19-20.
[10] RP (Jan. 13, 2016) at 20.
[11] RP (Jan. 13, 2016) at 20.
[12] RP (Jan. 13, 2016) at 20-21.

4

The trial court then voiced concern that Burns was referring to himself as if he was a different person. Burns informed the court, "He is, he's not me."[13] Burns elaborated, "That's a corporate entity, that is a false reality, okay."[14]

The trial court denied Burns's motion to proceed without counsel because Burns did not understand the nature and seriousness of the charges against him. Burns was removed from the courtroom after he became angry, claiming the court had no right to hold him because there was no claim against him or contract over his head. After Burn's removal, the trial court again expressed concerns about possible competency issues.[15]

The trial court issued a written order denying Burns's motion to proceed pro se citing concerns about his inability to fully understand the nature of the charges against him and properly represent himself. "[T]he defendant's interaction with the court raises significant concerns about the defendant's appreciation of the nature of the criminal charges against him, the potential consequences of proceeding pro se, and the standard of legal advocacy to which he would be held, including knowledge of courtroom procedures and rules."[16] The trial court concluded that it was "unable to find that the defendant was able to knowingly and voluntarily waive his right to counsel at this time."[17]

---

[13] RP (Jan. 13, 2016) at 21.
[14] RP (Jan. 13, 2016) at 22.
[15] "I don't believe I'm in a position to properly assess Mr. Burns'[s] competency based on simply the behavior that I've seen here, but if counsel has a question about competency obviously you know the procedure better than I do for raising that issue." RP (Jan. 13, 2016) at 23-24.
[16] Clerk's Papers (CP) at 8.
[17] CP at 8.

Burns renewed his request for self-representation multiple times before his trial. While in jail, he sent several complaints and "kite[s]" to the superior court with similar assertions.[18] He also requested to proceed pro se at a subsequent hearing. The trial court conducted a second colloquy and denied the pro se request because Burns did not understand the nature and seriousness of the charges and was, therefore, unable to knowingly and intelligently waive his right to counsel.

During the trial, the victim, Christina Jackson, did not testify. Jackson's neighbor, Carol Donovan, testified about the evening of the alleged assault. This testimony included Jackson's statements to Donovan. Burns objected to the testimony as hearsay. The trial court allowed the testimony as an excited utterance and present sense impression.

Donovan heard commotion coming from Jackson's condominium unit. When she opened the door, Donovan saw Jackson struggling up the stairs with Burns trying to grab her foot. Jackson called out, "He's trying to kill me. Call the police."[19]

Donovan pulled Jackson into her apartment and locked the door. A distraught Jackson told Donovan that Burns had choked her. Jackson pulled her hair aside and showed red marks on her throat. Donovan called the police and requested medical assistance. Jackson told Donovan that Burns had been living with her. Jackson said they had been drinking when they began fighting and he choked her until she blacked out.

---

[18] CP at 12-21 (capitalization omitted).
[19] RP (June 14, 2016) at 254.

Bellingham Police Officer Kent Poortinga responded to the emergency call. When he arrived, Jackson was upset and crying and had visible injuries. Jackson told him that Burns had been staying with her for two weeks. Jackson told Officer Poortinga that she had been talking to Burns about leaving when he became agitated. Burns "'snapped'" and began choking her.[20] Jackson was rendered unconscious multiple times until she kicked Burns off, broke free, and ran to Donovan's apartment.

After two days of testimony, a jury found Burns guilty of assault in the second degree and violation of a no contact. The jury also returned special verdicts finding that Burns and Jackson had been members of the same household and that Burns had twice been previously convicted for violating the provisions of a court order.

At sentencing, Burns argued that the two crimes should be considered the same course of criminal conduct for calculation of his offender score because the crimes were committed contemporaneously with the single objective of assaulting the victim. The trial court disagreed, citing the different intent and conduct required for each of the crimes. The trial court noted that violation of the no contact order was a course of conduct, while the assault was a single, separate event. As a result, the trial court considered the crimes separately for calculating Burns's offender score and sentence.

Burns appeals.

---

[20] RP (June 14, 2016) at 300.

7

## ANALYSIS

### Right to Self-Representation

Burns argues that the trial court deprived him of his right to self-representation when it denied his timely and unequivocal request to proceed pro se.[21] Because the lengthy colloquy revealed significant concerns about Burns's understanding of the gravity of his situation, we disagree.

"Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United States Constitution." State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing WASH. CONST. art. I, § 22; Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). This right to self-representation is "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." Madsen, 168 Wn.2d at 503. But courts are required to give "'every reasonable presumption'" against a defendant's waiver of right to counsel. Madsen, 168 Wn.2d at 504 (internal quotation marks omitted) (quoting In re Det. of Turay, 139 Wn.2d 379, 396, 986 P.2d 790 (1990)).

A defendant's request for pro se status must be unequivocal, timely, voluntary, knowing, and intelligent. Madsen, 168 Wn.2d at 504. "'[T]he record [should] establish that he knows what he is doing and his choice is made with eyes open.'" State v. Hahn, 106 Wn.2d 885, 889, 726 P.2d 25 (1986) (internal quotation

---

[21] Burns assigns error to the deprivation of his constitutional right to represent himself at trial. Burns focuses on his motion to proceed pro se that the trial court denied on January 13, 2016. Burns does not raise the self-representation issue with respect to his subsequent requests to represent himself or the trial court's denial of his second pro se motion in May 2016. Because Burns does not offer argument with respect to these assertions of his right to self-representation, we decline to address them. RAP 10.3(a)(6).

marks and citation omitted) (quoting Faretta, 422 U.S. at 835). "The grounds that allow a court to deny a defendant the right to self-representation are limited to a finding that the defendant's request is equivocal, untimely, involuntary, or made without a general understanding of the consequences." Madsen, 168 Wn.2d at 504-505. This finding must be based on an identifiable fact. Madsen, 168 Wn.2d at 505.

We review the denial of a request for pro se status under an abuse of discretion standard. Madsen, 168 Wn.2d at 504. Discretion is abused if a decision is manifestly unreasonable, based on facts unsupported by the record, or reached by application of the wrong legal standard. Madsen, 168 Wn.2d at 504. Improper denial of the right of self-representation requires reversal regardless of whether prejudice results. Madsen, 168 Wn.2d at 503.

Here, Burns made a timely and unequivocal request to waive counsel and represent himself. Therefore, the issue before this court is whether Burns's request was made knowingly and voluntarily.

The trial court conducted an extensive colloquy which revealed that Burns believed that the United States government was a corporation and was attempting to coerce him into a contract, which he refused to enter because he was not a citizen of the corporation. He wanted to be pro se and was "not buying into the company."[22] He persisted in the belief that the charges did not pertain to him because he had not agreed to the contract for the charges.

---

[22] RP (Jan. 13, 2016) at 15.

9

The trial court was unable to convince Burns of the seriousness of his situation despite explaining several times that Burns was subject to the charges and was facing the possibility of significant prison time and fines. In response, Burns stated that he understood the severity of the alleged crimes and possible sentences but that they did not pertain to him. At the end of the hearing, Burns was still convinced that the court could not hold him without a contract.

Burns also did not understand the skills he would need to represent himself. Burns insisted that he only needed the ability to keep his composure and act in order to defend himself in court. The trial court attempted to explain the importance of the various court rules of procedure and evidence to which Burns would be required to adhere. While Burns was unfazed, the trial court had concerns that Burns did not fully appreciate the technicalities of self-representation. Burns's interactions with the trial court revealed a lack of understanding of the gravity of his situation. Thus, his attempt to waive counsel was not knowing and voluntary.

Burns argues that the trial court did not clearly articulate the reasons for denying the motion for self-representation. We disagree. Throughout the colloquy and in the order, the trial court expressed concern about Burns's understanding of the situation. As noted in its order denying Burns's request, the trial court had "significant concerns about [Burns's] appreciation of the nature of the criminal charges against him, the potential consequences of proceeding pro se, and the standard of legal advocacy to which he would be held."[23] Burns's belief that the serious charges did not pertain to him without a contractual relationship hampered

---

[23] CP at 8.

his understanding of the situation and, therefore, his ability to waive his right to counsel.

Burns also contends that his "unconventional views" are not a valid basis for denying his motion to proceed pro se.[24] The colloquy demonstrates the trial court's concern that Burns's ideas compromised his ability to understand the severity of the charges and the difficulties he would face while representing himself. Thus, the trial court did not deny the motion merely because of Burns's "unconventional views," but because those views prevented Burns from comprehending the seriousness of the situation.

Finally, Burns argues that the trial court improperly denied his request to proceed pro se based on his mental competency without inquiring into his mental health status.

A defendant's mental health status is only one factor a trial court may consider to determine whether the right to counsel is knowingly and intelligently waived. In re Pers. Restraint of Rhome, 172 Wn.2d 654, 665, 260 P.3d 874 (2011). If the court has concerns about mental health, a "searching inquiry" into the defendant's mental health status is required. Rhome, 172 Wn.2d at 669.

Here, the trial court briefly inquired as to counsel's opinion on competency and encouraged counsel to seek evaluation if needed. But the court did not deny Burns's pro se request based on his competency. Instead, the trial court denied the request based on concerns about Burns's ability to knowingly and voluntarily

---

[24] Br. of Appellant at 10.

11

waive his right to counsel given his persistent belief that none of the issues pertained to him.

A trial court may properly deny a motion for self-representation "made without a general understanding of the consequences." Madsen, 168 Wn.2d at 504-05. Given Burns's demonstrated inability to understand that he was facing significant criminal charges and long-term incarceration, Burns was not unconstitutionally denied his right to self-representation. Therefore, we conclude that the trial court's denial of Burns's pro se request was not an abuse of discretion.

### Confrontation Clause

Burns argues that admission of Jackson's statements, through the testimony of Donovan and Officer Poortinga, was a violation of the confrontation clause. But because Burns failed to assert his right to confrontation at trial, we conclude that he may not raise the issue for the first time on appeal.

The confrontation clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). A defendant has an "obligation to raise at or before trial a Sixth Amendment confrontation clause objection to the admission of statements made by an absent witness." State v. O'Cain, 169 Wn. App. 228, 232, 279 P.3d 926 (2012). This obligation also applies to the right to confrontation afforded by the Washington State Constitution, article I, section 22. O'Cain, 169 Wn. App. at 252.

12

If not timely asserted, the right to confrontation is lost. O'Cain, 169 Wn. App. at 240. The failure to assert results in a loss rather than a denial of the right. State v. Fraser, 170 Wn. App. 13, 25-26, 282 P.3d 152 (2012). "[I]f there is no denial of a right, there is no error by the trial court, manifest or otherwise, that an appellate court can review." Fraser, 170 Wn. App. at 25-26. Therefore, assertion of the right to confrontation for the first time on appeal is not reviewable as a manifest error affecting a constitutional right. Fraser, 170 Wn. App. at 25-26.

Here, Burns did not assert his right to confrontation before or during trial. Burns only objected to Donovan's testimony repeating Jackson's statements as hearsay, and he failed to raise any objection to Officer Poortinga's recount of Jackson's statements. Because Burns did not raise the issue of confrontation below, he may not now seek appellate relief on this claim. See O'Cain, 169 Wn. App. at 252.

## Same Criminal Conduct

Burns claims that the trial court erred by finding that his convictions for felony violation of a no contact order and second degree assault were not the same criminal conduct for the purposes of offender score calculation and sentencing. He argues that the two crimes were part of an ongoing, uninterrupted sequence of conduct with the intent to assault Jackson. The trial court concluded that the crimes should be treated separately because the violation of the no contact order was a course of conduct while the assault was a single event. We agree with the trial court.

13

When a defendant is sentenced for two or more current offenses, the trial court may find that some or all of the offenses encompass the same criminal conduct and count as one crime. RCW 9.94A.589(1)(a). "'Same criminal conduct' . . . means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a).

Intent is viewed objectively. State v. Chenoweth, 185 Wn.2d 218, 222-23, 370 P.3d 6 (2016). The statute, RCW 9.94A.589(1)(a), is construed narrowly and the defendant bears the burden to show that current offenses encompass the same criminal conduct. State v. Graciano, 176 Wn.2d 531, 539-40, 295 P.3d 219 (2013).

Deciding whether crimes constitute same criminal conduct often involves determination of fact. Chenoweth, 185 Wn.2d at 220. Therefore, a trial court's determination of whether two or more offenses are the same criminal conduct will not be disturbed absent an abuse of discretion or misapplication of the law. Chenoweth, 185 Wn.2d at 220-21. "[W]here the record adequately supports either conclusion, the matter lies in the court's discretion." Graciano, 176 Wn.2d at 538.

Here, testimony at trial showed that Burns had been staying with Jackson for about two weeks prior to the assault. On the day of the assault, the two had been drinking together before Burns "snapped" and began choking Jackson. Violation of the no contact order happened when he began staying with her, which occurred prior to the assault and without evidence of intent to assault. Given this evidence, the trial court reasonably concluded that Burns's violation of the no

14

contact order and his assault on Jackson did not encompass the same criminal conduct.

Affirmed.

Trickey, ACJ

WE CONCUR:

Mann, J

Becker, J.